UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

G.O. AMERICA SHIPPING
COMPANY, INC.,

CASE NO. C17-912 MJP

ORDER ON MOTIONS

Plaintiff,

v.

CHINA COSCO SHIPPING
CORPORATION LIMITED, et al.,

Defendants.

The above-entitled Court, having received and reviewed:

1.  Defendant COSCO Atlantic Shipping Ltd.'s Motion for Increased Amount of
    Security for Costs (Dkt. No. 53), Plaintiff's Response (Dkt. No. 58), and Defendant's
    Reply (Dkt. No. 59);

2.  Defendant COSCO Shipping Lines Co., Ltd.'s Motion to Stay Execution of Process
    and Set Surety Bond Amount and Language (Dkt. No. 64), Plaintiff's Response (Dkt.
    No. 67), and Defendant's Reply (Dkt. No. 68); and

3. Defendant COSCO Atlantic Shipping Ltd.'s Motion to Dismiss and/or to Vacate Rule B Attachment (Dkt. No. 70), Plaintiff's Response (Dkt. No. 77), and Defendant's Reply (Dkt. No. 78);

all attached declarations and exhibits; and relevant portions of the records, rules as follows:

IT IS ORDERED that the motion to dismiss is GRANTED, and this matter is DISMISSED with prejudice.

IT IS FURTHER ORDERED that the remainder of the motions pending in this matter are DISMISSED as MOOT.

## **Background**

The factual and procedural background of this case is convoluted, to say the least:

In June 2017, Plaintiff filed a maritime claim against a shipyard in China, naming the shipyard – China Shipping Industry (Shanghai Changxing) Co. Ltd. – and a parent company – COSCO Shipping Heavy Industry Co., Ltd. – as defendants ("the Shipyard Defendants"). (Dkt. No. 1.) The complaint alleged that Plaintiff had contracted with the shipyard to repair its vessel, that the Shipyard Defendants had breached the contract and were refusing to return the vessel to Plaintiff's possession.

The day after filing the complaint, Plaintiff filed an *ex parte* motion for a writ of attachment, which was denied because Plaintiff had not identified any property of the Shipyard Defendants within the district. (Dkt. No. 4.) Plaintiff responded by filing an amended complaint and an amended motion for an attachment writ – the amended pleadings named COSCO SHIPPING Lines ("CSL" a subsidiary of China COSCO SHIPPING Corporation, Ltd.) as a

1    Defendant, but failed to allege that CSL was involved with the shipyard or was an alter ego of

2    any sort.

3

4    Nevertheless, in its attachment motion Plaintiff asserted that CSL owned three vessels

     that would call on ports in this district – COSCO TAICANG, COSCO EUROPE and COSCO

5    KAOSHIUNG.  The Court granted the amended *ex parte* motion and issued a writ of attachment

6    for the three ships.  (Dkt. No. 8.) On June 30, 2017, Plaintiff attached the COSCO TAICANG.

7

8    On that same day, COSCO Atlantic Shipping ("Atlantic") – the registered owner of

9    COSCO TAICANG – entered a limited appearance and moved to vacate the attachment on the

10   grounds that it was the publicly registered owner of the vessel, had not been named as a

11   defendant and had not been shown to be an alter ego of any of the named Defendants.  (Dkt. Nos.

12   14, 16.)  The motion was granted on the grounds that the seized vessel was not the property of

13   any named Defendant.  The writ was vacated only as to COSCO TAICANG; the other vessels

14   remain subject to attachment.[1]

15

16   Following the vacatur, Plaintiff filed a Second Amended Verified Complaint ("SAC;"

     Dkt. No. 56) naming other shipping companies within the COSCO conglomerate – in addition to

17   Atlantic, also named were Shanghai Ocean Shipping Co., COSCO Indian Ocean Shipping Ltd.

18   (owner of the COSCO KAOSHIUNG), and COSCO Oceania Shipping Ltd. (owner of the

19   COSCO OCEANIA)(hereinafter, collectively, "the Shipping Defendants").

20

21

22

23   ---

     [1] Notwithstanding the vacatur, Atlantic had already posted a $90,000 bond to secure the release of the TAICANG.
     Atlantic's motion to increase the security posted by Plaintiff reflects the amount the company expended to get its
24   ship back.

1

**Discussion**

2

Standard of review

3

4         In analyzing the parties' arguments under FRCP 12(b)(6), the Court must accept all facts

5    alleged in the complaint as true, and draw all inferences in the light most favorable to the non-

6    moving party.  Barker v. Riverside County Office of Educ., 584 F.3d 821, 824 (9th Cir. 2009).

7    To survive a motion to dismiss, Plaintiff's "factual allegations must be enough to raise a right to

8    relief above the speculative level on the assumption that all the allegations in the complaint are

9    true."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

10        "Threadbare recitals of all the elements of a cause of action, supported by mere

11    conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The

12    plaintiff must plead facts "that allow[] the court to draw the reasonable inference that the

13    defendant is liable for the misconduct alleged."  Id.  Factual allegations "that are merely

14    consistent with a defendant's liability… stop[] short of the line between possibility and

15    plausibility of entitlement to relief."  Id.

16        The Court should award dismissal where a complaint lacks a cognizable legal theory or

17    fails to allege sufficient facts to establish a cognizable legal theory.  Johnson v. Riverside

18    Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008).  Merely offering up "'labels and

19    conclusions' or 'a formulaic recitation of the elements of a cause of actions will not do.'"  Iqbal,

20    556 U.S. at 678.

21

22

23

24

<u>Motion to Dismiss</u>

Plaintiff's theory of the case, as well as the validity of what remains of the writ of attachment, rests on its ability to adequately plead and ultimately prove that the Shipping Defendants are alter egos of the Shipyard Defendants, and/or that all are alter egos of the parent company.

Plaintiff has succeeded in neither pleading nor demonstrating its alter ego theory. There is no question that all the named Defendants are part of a giant conglomerate of maritime interests that include construction, maintenance, repair and shipping operations.  But they are all corporate entities and, unless Plaintiff can plead and ultimately prove the elements required to pierce the corporate veil, they are not responsible for each other's liabilities.  There are a number of factors which can trigger the application of the alter ego theory:

1.  Disregard of corporate formalities;

2.  Inadequate capitalization;

3.  Intermingling of funds;

4.  Overlap in ownership, officers, directors, and personnel;

5.  Common office space, address and phone numbers;

6.  Degree of discretion exercised by the allegedly dominant and/or dominated corporation;

7.  The existence of "arms' length" dealing between the entities;

8.  The treatment of the corporations as independent profit centers;

9.  Payment or guarantee of the dominated corporation's debts by the dominating entity;

10. Intermingling of property between the entities.

1   Arctic Ocean Int'l, Ltd. V. High Seas Shipping, Ltd., 22 F.Supp.2d 46, 54 (S.D.N.Y. 2009).

2

3          Conclusory allegations of dominion and control without any factual support are insufficient

4   to sustain an alter ego theory.  Id.  As detailed *infra*, Plaintiff's SAC is a textbook example of

5   conclusory pleading; the amended complaint alleges:

6   •   China COSCO Shipping Line Corporation, Ltd. and COSCO Shipping Lines "dominated,

7          influenced and controlled each of the alter ego corporations and the officers thereof as

8          well as the business, property, and affairs of each of said corporation."  (SAC, ¶ 6.1.)  No

9          facts are alleged in support of this statement.

10  •   "[T]here existed and now exists a unity of interest and ownership between said individual

11         Defendants and each of the alter ego corporations wherein the separateness of said named

12         defendants and each of the alter ego corporations have ceased."  (SAC, ¶ 6.2.)  While

13         Plaintiff has alleged a common shareholder, there are no factual allegations that the

14         common shareholder has a controlling interest in any of the corporations, nor are there

15         any allegations which lead to a conclusion of a "unity of interest," a term which Plaintiff

16         does not define and which has (as far as this Court is aware) no legal significance.

17  •   "[E]ach alter ego corporation has been and now is a mere shell and naked framework

18         which said defendants used as a conduit for the conduct of business, property and affairs

19         of the parent."  (SAC, ¶ 6.3.)  Again, there is no definition or explanation of what

20         constitutes a "mere shell and naked framework" (or what the legal import of such a

21         condition would be), but in any event there are no facts alleged to support this statement.

22

23

24

- "China COSCO Shipping Line Corporation, Ltd. and COSCO Shipping Line Co [*sic*] maze of corporate holding companies and subsidiaries was created solely to avoid liability and have continued pursuant to internal fraud, plan, scheme and device conceived and operated by officers and directors of said legal entities." (SAC, ¶ 6.4.) First, this is a meaningless conclusory statement merely reciting the elements of the alter ego theory; no facts are alleged in support of it. Second, the conclusory allegation only concerns the Shipping Defendants and says nothing about an alter ego relationship with the parties against whom Plaintiff seeks relief, the Shipyard Defendants.

- "[T]here is commingling use of the named Defendants personal assets wherein the parent company is the "Group Owner" of subsidiary assets (e.g. vessels, cargo containers, etc.)." (SAC, ¶ 6.5.) Plaintiff's allegations in support of this are (1) inconclusive and (2) contained in its motions' briefing, not in its complaint. And, once again, the relationship Plaintiff is asserting is between the Shipping Defendants, with no involvement by the Shipyard Defendants alleged.[2]

- "[T]here is commingling use of intangible personal property between Defendants China COSCO SHIPPING Line Corporation, Ltd. and its alter ego subsidiaries." (SAC, ¶ 6.6.) This allegation concerns the fact that the name "COSCO" is owned by China COSCO SHIPPING Corporation, Ltd. and "publicly displayed by its subsidiaries." To the extent

---

[2] Plaintiff's "proof" of intermingling also seems to rest, at least in part, on a misunderstanding of the word "respectively." Defendants' dismissal motion states that "Defendants Atlantic Shipping, COSCO Indian Ocean Shipping Ltd. and COSCO Oceania Shipping Limited are registered owners of three vessels that are currently time chartered to COSCO SHIPPING Lines, the M/V COSCO TAICANG, M/V COSCO KAOHSIUNG and the M/V COSCO OCEANIA, respectively." (Dkt. No. 77, Motion at 11.) From Plaintiff's reference to this as "intermingling," the Court is led to believe that Plaintiff's counsel did not understand that "respectively" means that each one of the Shipping Defendants had an ownership interest in one of the listed vessels.

that this is true, it is at most proof of a licensing arrangement – it is not proof, nor even a "plausible suggestion," of "commingling of assets."

- "[T]here are common or overlapping directors and officers between subsidiaries and parent companies."  (SAC, ¶ 6.7.)  No facts are alleged in the SAC to support this; the facts which Plaintiff produces in its briefing do not even bear out this conclusion.

- "[T]here is direct and indirect financing between the named defendants and contractual agreements entered into between the parties."  (SAC, ¶ 6.8.)  First of all, no facts are alleged in support of this conclusion.  Secondly, proof of "contractual agreements… between the parties" does not plausibly suggest an alter ego relationship.

Plaintiff makes some attempt to cure these deficiencies in its response, primarily by reference to evidence not contained in its amended complaint.  But even that attempt is fruitless. Its "proof" of a common address consists of an exhibit listing Atlantic's address in Hong Kong and a screenshot of a website for COSCO SHIPPING that lists no address (*See* Dkt. No. 38, Ex. B; Defendants point out that clicking on the "Contact Us" link on the website Plaintiff cites reveals an address for COSCO SHIPPING in Shanghai; Dkt. No. 78, Reply at 3).

Citing to the same exhibit *supra*, Plaintiff claims that a man named Feng Boming is a common "Secretary and Director" of Atlantic and COSCO Shipping Corporation, Ltd. (Response at 11.)  The corporate filing by Atlantic to which Plaintiff cites, however, is from 2011.  A more recent filing (within the same declaration) from 2017 shows that Boming is no longer a director of Atlantic. (Dkt. No. 38, Ex. C at 2; "Date of Cessation" listed as October 8, 2011.)

1    In the final analysis, however, the most significant factor weighing against the alter ego

2 theory is not that Plaintiff fails to support its conclusions with relevant factual allegations, but

3 that all its purported evidence points only to a relationship between Atlantic and COSCO

4 Shipping Corporation, Ltd; i.e., the Shipping Defendants.  Since Plaintiff's lawsuit is directed at

5 the shipyard, the only relevant question (and relevant proof) is whether any of the Shipping

6 Defendants controlled the Shipyard Defendants, and/or whether all are alter egos of the parent

7 company.  *See* <u>Kite Shipping LLC v. San Juan Navigation Corp.</u>, 2012 U.S.Dist. LEXIS 182358

8 at *8-10 (S.D.Cal. Dec. 26, 2012).  Plaintiff's evidence, such as it is, relates to a relationship

9 between the COSCO parent company (China COSCO SHIPPING Corporation Ltd.; "CCSCL")

10 and Atlantic and COSCO Shipping Lines – even if Plaintiff's allegations were factually and

11 legally adequate, all that Plaintiff could establish with such proof is that the Shipping Defendants

12 are alter egos of CCSCL.

13
14    [J]ust because the alter ego theory makes a parent liable for the actions of a subsidiary
        which it controls… does not mean that where a parent controls several subsidiaries each
15      subsidiary then becomes liable for the actions of all other subsidiaries.  There is no
        respondeat superior between the subagents.

16 <u>Tatung Co. v. Shu Tze Hsu</u>, 217 F.Supp.3d 1138, 1181 (C.D.Cal. 2016)(*citing* <u>Roman Catholic</u>

17 <u>Archbishop v. Superior Court</u>, 93 Cal.Rptr. 338, 342 (1971)).  Plaintiff cites to no authority

18 holding one subsidiary liable for the acts of another simply because they share a parent company.

19
20    In what can only be seen as an act of desperation, Plaintiff cites to Wikipedia for its last-

21 gasp argument: the People's Republic of China controls <u>all</u> these companies and the Court

22 cannot apply standard rules and concepts of corporate structure and liability to this kind of

23 autocratic, totalitarian system.  Wikipedia is not admissible as a source of legal proof and the

24 argument is legally insupportable.

Piercing the corporate veil is "the rare exception" rather than the rule…" <u>Dole Food Co. v. Patrickson</u>, 538 U.S. 468, 475 (2003).  "Disregard of corporate separateness requires that the controlling corporate entity exercise total dominion of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own." <u>Chan v. Society Expeditions</u>, 123 F.3d 1287, 1294 (9th Cir. 1997).  Allegations of "common ownership" will not suffice; "[a]ctual dominion, rather than the opportunity to exercise control, must be shown." <u>DeJesus v. Sears, Roebuck & Co., Inc.</u>, 87 F.3d 65 69-70 (2nd Cir. 1996).  And, in this case, that dominion must be of the parent CCSCL or the Shipping Defendants <u>over</u> the Shipyard Defendants who are alleged to have committed the wrongful acts here.

Plaintiff has utterly failed in this regard.  There is neither proper pleading nor proof of alter ego liability here.  Plaintiff has failed to adequately allege facts upon which it is entitled to relief and the granting of Defendants' FRCP 12(b)(6) is completely warranted.  The only question remaining is whether the dismissal should be with or without prejudice; i.e., whether Plaintiff should be permitted yet another opportunity to amend.

Plaintiff has never served the Shipyard Defendants; its lawsuit rests entirely on its ability to establish alter ego liability over those Defendants who have appeared in this case.  Its pleading of alter ego liability is conclusory, unsupported by adequate factual allegations and in any case is legally ineffective (since the alter ego liability it asserts does not involve the parties who allegedly bear direct liability).  It has previously been advised of the inadequacy of its pleadings and has attempted to revise them satisfactorily.

This is Plaintiff's second amended complaint.  In the face of a frontal assault on its alter ego theory, the best it could produce was conclusory allegations and evidence which does not

ORDER ON MOTIONS - 10

1   support its position, bolstered by citations to Wikipedia.  The Court cannot, in the interests of

2   justice and judicial economy, find that giving Plaintiff a chance to further amend would produce

3   a legally viable complaint.  And the Court agrees with Defendants that, if Plaintiff cannot

4   establish liability under an alter ego prosecution, it has no case to prosecute.  On those bases,

5   dismissal with prejudice is warranted, and the Court so orders.

6   Vacatur

8        Even were the Court not inclined to dismiss Plaintiff's case outright,  it would

9   nevertheless vacate the writ of attachment which remains on the two vessels which were not

10  released by the July 14, 2017 order (Dkt. No. 52) -- COSCO EUROPE and COSCO

11  KAOSHIUNG.

12  Supp. Admiralty Rule E(4)(f) provides:

14        Whenever property is arrest or attached, any person claiming an interest in it shall be
          entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest
15        or attachment should not be vacated or other relief granted consistent with these rules.

16  Plaintiff's burden of proof in this regard is a showing, on a "probable cause" basis, supporting its

17  admiralty claim (Dkt. No. 62, Order at 2); specifically, that it has a right to attach the vessels in

18  question on a theory of alter ego liability.   Absent a showing of alter ego liability, Plaintiff

19  cannot establish a maritime claim against (or attach the property of) the Shipping Defendants.

20                                   **Conclusion**

22        Plaintiff's entire case rests on its ability to satisfactorily plead an alter ego relationship

23  between the parent corporation, the Shipping Defendants and the Shipyard Defendants.  It has

24  not succeeded in doing so, and the Court finds that further opportunities to remedy the

deficiencies in its pleading and proof would be futile.  On that basis, the Court grants Defendants' motion to dismiss with prejudice.

Alternatively, the Court finds that in the absence of proof establishing on a probable cause basis that an alter ego relationship exists between the above-described entities, Defendants are entitled to vacatur of the writ of attachment on the remaining two vessels previously arrested by order of this Court.

The clerk is ordered to provide copies of this order to all counsel.

Dated: December 5, 2017.

Marsha J. Pechman
United States District Judge